COBB, Judge,
dissenting.
In its memorandum, the majority affirms Roger Calhoun’s capital-murder conviction and sentence of life imprisonment without parole. Calhoun argued that the trial court erroneously excluded his expert witness, Gregory Hopkins, from testifying because, according to the trial court, Calhoun failed to provide the State with a copy of the document Hopkins had prepared and given to defense counsel. The trial court found, and the majority agrees, that the document was a “report” within the meaning of Rule 16.2(c), Ala. R.Crim. P., and was therefore discoverable by the State. The trial court informed Calhoun that he would not be able to call Hopkins as a witness unless he provided the document to the State. Calhoun refused to provide the document to the State, arguing that the document was not discoverable because it was an internal defense document, and Hopkins was not permitted to testify. I have examined the document and have attached it to this dissenting opinion. The document is clearly an internal defense memorandum intended for use only in the investigation and defense of the case. Therefore, pursuant to Rule 16.2(d), Ala. R.Crim. P., the document was not discoverable. The trial court erred in determining otherwise. The court also committed reversible error when it refused to allow the defense expert to testify because it had determined that the document prepared by the expert had to be provided to the State and defense counsel had refused to provide.it. Because Calhoun’s right to present expert testimony to support the theory of defense in his case was foreclosed by the trial court’s errors, I must dissent.
Rule 16.2(c), Ala. R.Crim. P., provides, in pertinent part, that upon written request of the State the defendant shall provide
“results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, which are within the possession or control of the defendant and which the defendant intends to introduce in evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial, if the results or reports relate to the witness’s testimony.”
Rule 16.2(d), Ala. R.Crim. P., excludes some items from discovery. That rule provides, in pertinent part, “[ejxcept as to scientific or medical reports, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant or the defendant’s attorneys or defendant’s agents in connection with the investigation or defense of the case .... ” (Emphasis added.)
The majority contends that the document prepared by Hopkins was “a report detailing Hopkins’ findings based on the evidence.” While that is, to some extent, an accurate description of the document Hopkins provided, that does not support the trial court’s determination or this Court’s holding. The document included some of Hopkins interpretations of the evidence obtained at the scene. More importantly, however, the document included Hopkins theory of case — that one of the victims was shot accidentally and that the *77 other victim was shot in self-defense. The document includes reference to weaknesses in the defense, such as, “[t]his is where it looks bad for [the defendant],” and “[t]he problems [for the defense theory] are the two postmortem wounds and fleeing, which can be explained.” It cannot possibly be considered appropriate to order disclosure of documents that include an analysis of the weaknesses of the defense’s case. Rule 16 does not require this and to order the disclosure of such documents violates Rule 16.2(d) and the fundamental fairness and constitutional protections that are to be afforded to every defendant. Furthermore, Hopkins’s memorandum includes a recommendation to defense counsel on how they should qualify him as an expert and present his testimony to the jury. This, too, indicates that the memorandum was not simply a report of findings based on Hopkins’s examination of the evidence, but that it was in internal document regarding defense strategy. Finally, Hopkins conducted no physical or mental examinations or scientific tests or experiments; thus, his memorandum was not a “report” of any of those items.
Because the document prepared by Hopkins was an internal defense memorandum made by one of the “defendant’s agents in connection with the investigation or defense of the case,” Rule 16.2(d), Ala. R.Crim. P., the document was not discoverable. The trial court erred to reversal when it required that Calhoun provide Hopkins’s document to the State and when it precluded Hopkins from testifying when Calhoun refused to do so. The trial court prevented Calhoun from presenting testimony essential to his defense. This fundamental error cannot be considered harmless.
Based on the foregoing, I dissent.
*78 A-Ho,chrí\eí\t
ANALYSIS OF EVIDENCE IN CALHOUN V. STATE FOR: RANDY GLADDEN; CECILIA POPE BY: GREGORY N. HOPKINS
Sheri Shepard Calhoun was shot in left forearm at a range of 8* or less (b/c stippling will not occur out of 2” bbl over .20 cm Di Malo p. 71⅛ Bullet went from back of forearm out inside of it to enter Sheri’s chest Keyhole entry wound in chest (poss.) Substantiates Defendant’s claim that she was shot during the struggle between he and Bobby. That Bobby would draw a gun and threaten Defendant with it is substantiated by the feet that he had a pocket holster in his pants pocket that was too big for the little 25 auto. (p. 4 Hutchinson’s report). Conclusion, Bobby was carrying foe stainless, Colt 38 Detective Special in his pocket at the outset of the argument
A shootout ensued from foe point of Sheri being shot It is dear from foe evidence that Bobby was in the hallway firing into foe den at a downward angle (from damage to candi pillows and end table). He used the hallway doorframe as partial cover. Roger was apparently douching down behind foe couch and/or coffee table, as shown by foe bullet strikes in Bobby’s body (lower torso and forearm, paths at upward angles). The bit in foe left forearm occurred when Bobby refiexivdy cither stuck it out to protect himself before he ran, or, if firing two-handed, while shooting at Defendant. From the nature of foe injuries, Bobby took foe hit in foe rigid outside thigh while bladed to shoot at Defendant. The shot to the interior right thigh and stomach came as be turned to flee. The shot to the chest is probably what caused him to run, coincident with him running out of ammo. The unfired round (Ex. #10) with dented primer found in the hallway door to den is likely the round that Defendant says Bobby first tried to fixe, next to a casing. (Ex. #12).
Here is a mystery. Roger says he took foe first gun away from bobby. Roger dumped the cases from his gun from where he fired at Bobby, (south of foe couch/coffee table, Ex. #’$ 2,3,4,5,6,7) that accounts for those rounds in Bobby’s original gun, except foe misfire. Bobby dumped his cases from foe empty, blued Colt 38 in the hallway by foe bathroom (Ex. #’s 13,14,15,16,17,18). Who dumped out foe spent case and foe unfired round and why is unknown. I can only speculate that while Bobby went for the second Colt, Roger had time to find cartridges and reload two rounds before he saw Bobby coming back down the hall rearmed, whereupon Roger retreated to the south end of foe couch/coffee table.
Bobby’s .38 back wound came as he spun away from Defendant to free down the hall. At this point, it would have been nearly impossible for Defendant to tell if he’d hit Bobby or not Roger’s own wound, altering on foe right dorsal area and exiting foe left. Shows he was crouching and bladed with his right side toward Bobby during the shootout Note: It may have been inflicted during foe first straggle also, since there is apparent stippling of a close-range shot at the entry wound.
*79 Wounded, knowing guns were all over the house and many loaded, Defendant would obviously be confused as to what to do, and thinking that Bobby may return to finish him oSE, now feat Defendant’s gun was empty. Bobby retreated to a bedroom where Defendant knew there would be both long guns end hand guns. To flee might mean he’d be killed as he started his motorcycle, or vulnerable to pistol, shotgun, or rifle fire up to at least 100 yards down the street He had only seconds to decide. He might be able to tell from the hall carpet that Bobby was hit, but couldn’t know bow badly. (H& was hit yet functioning) (The hall carpet blood may be Sheri’s) To keep Bobby from killing him as he fled, he snatched up the .410 shotgun and the ¿5 auto. Fearing for his life, he kicked open the bedroom door and shot Bobby.
Bobby, meanwhile, was panicked and losing blood. He tried to jam a .357 round into flic .38, but gave up, realizing it wouldn’t fit or fire. He forgot about the loaded .357 in the drawer below. He tried to push open toe storm window and escape, hut Roger would have burst in then. Bobby tried to get a shotgun from under the bed, but Defendant shot him with flic shotgun, putting turn down. He died from trauma and blood loss soon after he hit the floor.
This is where it looks bad for Roger. Bobby was shot through the cheek with a .25 round that passed into the wall. There is no blood from the wound and the yellow tissue around the entry indicates m post mortem wound. Ditto fire neck shot. After shooting Bobby twice when he was clearly no longer a threat, the gun jammed on Roger. It is clear he deliberately placed the 125 auto on bobby to try to make it look like he’d had it and was firing nr irivnit tn fire nl Defendant, hi if ⅛⅛ is el erntv not the case.
In Defendant's natural confusion at lids time, his action altering the crime harks bad: to the old “If you shoot a burglar with one leg made the window and he fells outside, drag him in and put a butcher knife in his hand.” His second mistake is fleeing the scene, claiming Sheri told him to. The natural thing would have been to reader first aid until HEMSI arrived. Look for the prosecutor to emphasize this.
IBs driving around, seeking assistance, saying he wanted to kill himself, and attempt at “blue suicide" atthc ERmx si! symptomatic of the kind of total confusion that hits people in deadly force incidents. It does not necessarily show clear intent to flee or cover the crime. Had he wished to kill Shai and Bobby from the outset, he had a more accurate and powerful gun in his saddlebags. Moreover, U.S. studies hove shown that there is a built-in aversion in humans to killing another human being. Soldiers must be trained out of it to get more than 14% to even fire their weapons in combat
It seems to me that fire bulk of fee evidence shows Sheri was shot accidentally, and Bobby was killed in self-defense. The problems are fee two postmortem wounds and fleeing, which can be explained.
Finally, I think you should qualify and present me as an expert oo firearms, use-of-foree methods and law of self-defense. This is broad enough to allow me to speak to fee psychological aspects and terminal effects of bullets as well.
[[Image here]]